**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR CONSTITUTIONAL INTEGRITY, | Case No. 26-cv-2018 |
| Plaintiff, | Judge Loren L. AliKhan |
| v. | |
| THE FEDERAL COMMUNICATIONS COMMISSION, | |
| Defendant. | |

**PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT OF THEIR
RENEWED MOTION FOR SUMMARY JUDGMENT**

JARED S. PETTINATO, DC Bar No. 496901
The Pettinato Firm
1930 18th St. NW, Ste. B2, PMB 620
Washington, DC 20009
(406) 314-3247
Jared@JaredPettinato.com

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................iii

Introduction ........................................................................................................... 1

The Freedom of Information Act .......................................................................... 2

Factual Background .............................................................................................. 4

    I. Chronology .................................................................................................. 4

    II. FCC Chair Carr threatened ABC over Kimmel's statements. ........................... 5

    III. Citizens sent a precise request for Carr's text messages with timeframes and search terms, but the FCC never searched his cellphone. ..................................... 7

Standard of Review................................................................................................ 8

Standing ................................................................................................................. 9

Argument ............................................................................................................... 9

    I. FOIA requires agencies to produce text messages when the requester reasonably describes them. ................................................................................... 9

    II. The FCC produced irrefutable evidence that FCC Chair Carr uses text messages for government business, and FOIA compels a search and production. 13

Conclusion ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) 10

*\*Campbell v. U.S. Dep't of Just.*, 164 F.3d 20 (D.C. Cir. 1998)...................... 10, 11, 13

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145 (D.C. Cir. 2016).. 3

*\*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. CV 17-1208 (BAH), 2021 WL 918204 (D.D.C. Mar. 9, 2021) ................................................................. 12

*Defs. of Wildlife v. USDA*, 311 F.Supp.2d 44 (D.D.C. 2004) ................................... 11

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976)..................................................... 3

*EPA v. Mink*, 410 U.S. 73 (1973)............................................................................ 9

*First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114 (2026)............... 2

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375 (1980) ............. 3

*Informed Consent Action Network v. NASA*, 805 F. Supp. 3d 277 (D.D.C. 2025) ....... 8

*Jeffries v. Barr*, 965 F.3d 843 (D.C. Cir. 2020) ..................................................... 8

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 373 F. Supp. 3d 120 (D.D.C. 2019) ........ 12, 13

*Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020) ......................... 4

*Marinelarena v. Sessions*, 869 F.3d 780 (9th Cir. 2017) ......................................... 10

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ................................................. 9, 11

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ....................................... 3

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ............................................ 3, 4

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) .................................. 9

*Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014 (D.C. Cir. 2021) ................................................................................................................ 9

*Schladetsch v. U.S. Dep't of HUD*, No. 99-0175, 2000 WL 33372125 (D.D.C. Apr. 4, 2000) ............................................................................................................... 10

*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82 (D.D.C. 2023) ......................................................................................................... 13, 14

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749 (1989) ........... 2

*U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136 (1989).......................................... 3, 9

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ................................................... 10

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982)........................................................ 10

*Zivotofsky v. Secretary of State*, 444 F.3d 614 (D.C. Cir. 2006) ................................ 9

**Statutes**

Freedom of Information Act, 5 U.S.C. § 552.................................................... passim

**Rules**

Federal Rule of Civil Procedure 56(b)............................................................... 8

**Other Authorities**

CBS News, *Stand-up comedian gets nearly 6 years in Russian prison over joke about war veteran* (Feb. 4, 2026), *available at* cbsnews.com/news/comedian-sentenced-russia-prison-joke-war-veteran ............................................................................... 1

Jon Miltimore, *10 "Subversive" jokes that could've landed you in an East German Prison* (Nov. 7, 2019) ................................................................................... 1

*"The Stasi [East German internal security] held a competition for the best political joke. First prize? Fifteen to twenty years."*

—Unknown[1]

## INTRODUCTION

Russia recently sentenced comedian Artemy Ostanin to a penal colony for six years for telling a joke.[2] Russia also convicted and sentenced doctors, street performers, artists, and singers for anti-war messages. *Id.* Power has thin skin.

Other governments punish comedians for their jokes, but this is the United States of America. The First Amendment protects our free speech. That guarantee encapsulates hard-fought wisdom that the sharpest criticism and the most devastating appraisals force us to face our most vulnerable weaknesses and our starkest hypocrisies. Jokes force policymakers to face their assumptions and the contradictions embedded in their thinking. And jokes help bring citizens deeper into policy discussions by providing a payoff. When the United States government silences the voices that hold us accountable, we turn into a country of sycophants living by groupthink and afraid to tell the king he is wearing no clothes.

In the wake of terrible political violence that left Charlie Kirk dead, Federal Communication Commission Chair Brendan Carr sought to punish comedian Jimmy Kimmel for his jokes. He threatened ABC-Disney, which broadcasts Jimmy

---

[1] Jon Miltimore, *10 "Subversive" jokes that could've landed you in an East German Prison* (Nov. 7, 2019), *available at* https://fee.org/articles/10-subversive-jokes-that-could-ve-landed-you-in-an-east-german-prison.
[2] CBS News, *Stand-up comedian gets nearly 6 years in Russian prison over joke about war veteran* (Feb. 4, 2026), *available at* cbsnews.com/news/comedian-sentenced-russia-prison-joke-war-veteran.

Pl.'s P&A in Supp. of Their Renewed Mot. for Summ. J.
*Citizens for Constitutional Integrity v. FCC*, No. 26-cv-2018          1

Kimmel Live!. But no one outside of the FCC and ABC knows precisely what Carr threatened. The People of the United States deserve to know, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552, gives them the right to know.

The Damocles' sword is almost certainly chilling other comedians' speech. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1127 (2026) (quotations omitted). Without knowing more details of what Carr was doing, the FCC's Sword of Damocles will continue to hang and chill comedians' speech. This is unamerican.

Citizens for Constitutional Integrity requested Carr's text messages under FOIA. But Defendant the FCC is stonewalling. It failed to complete a reasonable search. It produced zero text messages—except for screenshots of one text that Carr emailed to himself. On appeal, the FCC doubled-down.

When the Government punishes core, critical, political speech, it threatens the freedoms we hold most dear. FOIA requires the FCC to produce the responsive text messages. It compels declaratory and injunctive relief against the FCC to complete a reasonable search and to produce the responsive text messages immediately.

## THE FREEDOM OF INFORMATION ACT

Congress recognized "secrecy in government" as "one of the instruments of Old World tyranny," and it enacted FOIA to help democracy function. *See U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772-73 (1989) (quotations omitted). It intended to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361

(1976) (citation modified). Congress "ensure[d] [that] an informed citizenry, vital to the functioning of a democratic society" could have a "check against corruption and . . . hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Therefore, FOIA "require[s] agencies to adhere to a general philosophy of full agency disclosure." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989) (citation modified). Congress assigned "federal courts as the necessary protectors of the public's right to know." *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 387 (1980).

FOIA requires even agency heads to produce their records. "[T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975). "If the agency head controls what would otherwise be an agency record, then it is still an agency record and still must be searched or produced." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 149 (D.C. Cir. 2016) (overturning a district court for failing to require an agency to produce records "on a private email account in [the agency head's name] at a site other than the government email site").

When a person "reasonably describes" records and requests them, FOIA directs, the agency "shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). In FOIA, the term "records" includes text messages as information in "any format, including an electronic format." *Id.* § 552(f)(2)(A). FOIA curbed agencies' "apparently unbridled discretion" to "conceal information." *GTE Sylvania*, 445 U.S. at 385, 386. By using the word "shall," FOIA precludes agency discretion to decline

to produce the responsive records. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("'shall' typically creates an obligation impervious to discretion" (citation modified)). Agencies can refuse to produce documents only if an exemption applies. *See* 5 U.S.C. § 552(b); *Sears, Roebuck*, 421 U.S. at 136.

## FACTUAL BACKGROUND

### I. Chronology

| | |
|---|---|
| September 10, 2025 | Someone, allegedly Tyler James Robinson, shot and killed "conservative influencer Charlie Kirk during an event at Utah Valley University."[3] |
| September 15, 2025 | Jimmy Kimmel pointed out hypocrisies and opportunism he saw surrounding that murder.[4] |
| September 17, 2025 | Carr effectively threatened ABC television and radio network's license if it did not suspend Kimmel.[5] |
| September 18, 2025 | ABC suspended Kimmel.[6] |
| September 23, 2025 | ABC restored Jimmy Kimmel's show.[7] |

---

[3] Jon Haworth and Megan Forrester, *Tyler Robinson said he killed Charlie Kirk because he 'spreads too much hate'*, ABC News (Sept. 16, 2025), *available at* https://abcnews.com/US/tyler-robinson-set-face-formal-charges-shooting-death/story?id=125614396.

[4] Anthony Robledo, What did Jimmy Kimmel say about Charlie Kirk? Watch the monologue, USA Today (Sept. 17, 2025), *available at* https://www.usatoday.com/story/entertainment/tv/2025/09/17/jimmy-kimmel-charlie-kirk-comments/86209731007 (with embedded video).

[5] Benny Show, *Jimmy Kimmel LIES About Charlie Kirk Killer, Blames Charlie For His Murder!? Disney Must Fire Kimmel* (Sept. 17, 2025), *available at* https://www.youtube.com/watch?v=uTyX9JC-rhA.

[6] ABC News, ABC preempts 'Jimmy Kimmel Live!,' network says (Sept. 18, 2025), *available at* https://abcnews.com/US/abc-preempts-jimmy-kimmel-live/story?id=125690074.

[7] Jimmy Kimmel Live, Jimmy Kimmel is Back! at 4:00 (Sept. 23, 2025), available at https://www.youtube.com/watch?v=c1tjh_ZO_tY.

| January 5, 2026 | Citizens filed their FOIA request for Carr's texts "on or between September 10 and September 23, 2025."[8] |
|---|---|
| March 13, 2026 | The FCC responded to Citizens' request.[9] |
| March 31, 2026 | Citizens appealed from the FCC's response.[10] |
| April 28, 2026 | The FCC responded to Citizens' appeal.[11] |

## II. FCC Chair Carr threatened ABC over Kimmel's statements.

On September 10, 2025, someone, allegedly Tyler James Robinson, shot and killed "conservative influencer Charlie Kirk during an event at Utah Valley University."[12] No reasonable person disputes the horror of this political violence.

Five days later, on ABC's Jimmy Kimmel Live!, Jimmy Kimmel pointed out the hypocrisies and opportunism he saw surrounding that murder:

> We hit some new lows over the weekend with the MAGA gang desperately trying to characterize this kid who murdered Charlie Kirk as anything other than one of them and doing everything they can to score political points from it. In between the finger-pointing, there was, uh, grieving on Friday – the White House flew the flags at half-staff, which got some criticism, but on a human level, you can see how hard the president is taking this.

> [Internal clip omitted]

> Yes, he's at the fourth stage of grief: construction. Demolition, construction. This is not how an adult grieves the murder of someone he called a friend; this is how a four-year-old mourns a goldfish, OK? And it didn't just happen once. And then we installed the most beautiful chandelier. Responses you

---

[8] New Request FCC-FOIA-2026-000266 (Jan. 5, 2026), ECF No. 1-5.

[9] Letter from Kristi Thompson to Jared Pettinato (Mar. 13, 2026), ECF No. 1-6.

[10] Letter from Jared Pettinato to Adam Candeub (Mar. 31, 2026), ECF No. 1-8.

[11] Email from FOIA-Appeal@fcc.gov to Citizens@ConstitutionalIntegrity.org (Apr. 28, 2026), ECF No. 1-9.

[12] Jon Haworth and Megan Forrester, *Tyler Robinson said he killed Charlie Kirk because he 'spreads too much hate'*, ABC News (Sept. 16, 2026), *available at* https://abcnews.com/US/tyler-robinson-set-face-formal-charges-shooting-death/story?id=125614396.

wouldn't believe. Who thinks like that, and why are we building a $200 million chandlier [sic] in the White House? Is it possible that he's doing it intentionally so he can be bad about that instead of the (Jeffrey) Epstein list?

*What did Jimmy Kimmel say about Charlie Kirk? Watch the monologue*, USA Today (Sept. 17, 2025). Further facts revealed that Kimmel was likely incorrect in suggesting the killer could be one of the "MAGA gang." *See Tyler Robinson said he killed Charlie Kirk because he 'spreads too much hate'.*

Two days later, with the benefit of hindsight, Carr jumped on that inaccuracy to threaten ABC over Kimmel's statement. *Jimmy Kimmel LIES About Charlie Kirk Killer, Blames Charlie For His Murder!? Disney Must Fire Kimmel.* Interviewed against a backdrop with the United States flag and the FCC flag, Carr effectively threatened ABC's license if it did not punish Kimmel:

> I want to reinvigorate the public interest . . . [Broadcasters] have a license granted by us at the FCC, and that comes with it an obligation to operate in the public interest. And we can get into some ways that we've been trying to reinvigorate the public interest and some changes that we've seen. But frankly, when you see stuff like this, *I mean, look, we can do this the easy way or the hard way. These companies can find ways to change conduct and take action frankly uh on Kimmel or you know there's going to be additional work for the FCC ahead.*"

*Id.* at 11:16-11:56 (emphasis added). When asked what, specifically, Carr wanted ABC to do, Carr proposed suspending him: "you could certainly see a path forward for uh *suspension over this* and again, you know, the FCC is going to have remedies we could look at. Um and again, you know, we may ultimately be called to be a judge on that . . . ." *Id.* at 12:50-13:03 (emphasis added).

The next day, as Carr directed, ABC suspended Jimmy Kimmel Live!. ABC News, ABC preempts 'Jimmy Kimmel Live!,' network says (Sept. 18, 2025). Five

days later, ABC restored Kimmel's program. Jimmy Kimmel Live, Jimmy Kimmel is Back! at 4:00 (Sept. 23, 2025).

### III. Citizens sent a precise request for Carr's text messages with timeframes and search terms, but the FCC never searched his cellphone.

Citizens sent a refined FOIA request with one request focused on a narrow set of Carr's text messages. They specified keywords and the 14-day timeframe that includes the day of Charlie Kirk's death until the day ABC restored Kimmel. New Request FCC-FOIA-2026-000266 (Jan. 5, 2026), ECF No. 1-5. They asked for "All text messages or threads, Signal messages or threads, or other messaging app messages or threads to or from FCC Chairman Brendan Carr that contain the words 'Jimmy', 'Kimmel', 'ABC,' 'Charlie', or 'Kirk' on or between September 10, 2025, and September 23, 2025." *Id.* Citizens also requested emails. *Id.*

The FCC responded over two months later. It produced zero text messages—except one embedded in the email response. Letter from Kristi Thompson to Jared Pettinato (Mar. 13, 2026), ECF No. 1-6; Excerpts from Reading Room FOIA Kimmel Part 4, ECF No. 1-7. To explain that complete absence of response, the FCC stated, "The Office of the Chairman searched for additional responsive records. The search produced no additional records responsive to your request." Letter from Thompson.

In its March appeal letter, Citizens objected to the FCC's failure to produce the text messages they specifically requested. Letter from Jared Pettinato to Adam Candeub (Mar. 31, 2026), ECF No. 1-8. They explained the FCC has the technical capacity to search Carr's phone for responsive text messages, but apparently failed to search that phone. *Id.* Citizens also forwarded a copy of reporter Brian Stelter's

Pl.'s P&A in Supp. of Their Renewed Mot. for Summ. J.
*Citizens for Constitutional Integrity v. FCC*, No. 26-cv-2018                                     7

tweet where he stated he had received texts from Carr about ABC suspending Kimmel. Brian Stelter, Tweet (Sept. 17, 2025, at 6:59 p.m.), https://x.com/brianstelter/status/1968449834697834591, ECF No. 5-3.

The FCC denied Citizens' appeal. It pointed to the single, email-embedded text, as if that qualified as a reasonable search for text messages. Email from Kristi Thompson to Citizens@ConstitutionalIntegrity.org (Apr. 28, 2026), ECF No. 1-9. No facts support any assertion that the FCC searched Carr's cellphone or that it searched any other record system than emails. The FCC did not dispute that Carr had sent Brian Stelter that text.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(b) allows a party to "file a motion for summary judgment at any time until 30 days after the close of all discovery." *See Jeffries v. Barr*, 965 F.3d 843, 848 (D.C. Cir. 2020) (remarking that early-filed summary judgment motions, like the Department of Justice's motion there, "may well" surprise the other party); Fed. R. Civ. P. 56(b) advisory committee's note to 2009 amendment ("the rule allows a motion for summary judgment to be filed at the commencement of an action"). On summary judgment, courts consider whether the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts can resolve the "'vast majority'" of FOIA cases via summary judgment, *Informed Consent Action Network v. NASA*, 805 F. Supp. 3d 277, 282 (D.D.C. 2025), and the United States Court of Appeals for the District of Columbia Circuit prefers that

approach. *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1024 (D.C. Cir. 2021).

FOIA gives "[a]ggrieved citizens . . . a speedy remedy in district courts." *EPA v. Mink*, 410 U.S. 73, 79, 93 (1973). It also assigns the burden of proof to the agency to prove FOIA allowed it to withhold the records. 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action."); *Tax Analysts*, 492 U.S. at 142.

## STANDING

Citizens have met the Article III standing requirements. "Anyone whose request for specific information has been denied has standing to bring an action." *Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006).

## ARGUMENT

### I. FOIA requires agencies to produce text messages when the requester reasonably describes them.

The FCC failed to complete a reasonable search by searching Carr's cellphone for responsive texts. When a plaintiff moves for summary judgment because an agency failed to complete a reasonable search, the agency "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citation modified). FOIA requires the agency to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

In particular, FOIA requires the agency to prove "that *no other record system was likely to produce responsive documents.*" *Id.* (emphasis added). If the court "record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper," then "congressional intent" compels "tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998), as amended on denial of rehearing (Mar. 3, 1999).

The agency bears the "burden as to the adequacy of its search" for responsive records under FOIA. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011). Because the agency "bears the burden of proof[, it] loses if the record is inconclusive on the crucial point." *Marinelarena v. Sessions*, 869 F.3d 780, 789 (9th Cir. 2017); *see Vaughn v. Rosen*, 523 F.2d 1136, 1147 (D.C. Cir. 1975).

The FCC has produced no evidence it completed any reasonable search—and no evidence it searched Carr's phone, the record system that contained the text messages Citizens requested. The FCC has no justification for its failure. "FOIA applies equally to all agency records, regardless of format." *Schladetsch v. U.S. Dep't of HUD*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000) (citing *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982)). Citizens specifically requested text strings, and they specifically described search terms. Therefore, they reasonably described the records. *See Campbell*, 164 F.3d at 28 (recognizing FOIA requires searches when the requester "expressly" requests them). The FCC violated FOIA by failing to search Carr's phone and producing the responsive text messages.

In the administrative process, the FCC asserted flimsy, insufficient excuses. Its initial response made a meaningless, conclusory statement:

> "The Office of the Chairman searched for additional responsive records. The search produced no additional records responsive to your request."

Letter from Kristi Thompson. Conclusory statements do not carry the agency's burden. *See Morley*, 508 F.3d at 1124. "[W]here no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Id.* at 1126-27 (quotations omitted). The FCC could have made the same statement if it had only searched for the text messages in the couch cushions. *See Defs. of Wildlife v. USDA*, 311 F.Supp.2d 44, 55 (D.D.C. 2004) ("With regard to the defendants' search of the Under Secretary of the NRE's office, the bare assertion that the Deputy Under Secretary saw the FOIA request and that he stated that he had no responsive documents is inadequate because it does not indicate that he performed any search at all."). Therefore, the FCC's conclusory statement fails to carry its burden of demonstrating a reasonable search.

In responding to the appeal, the FCC pointed to the one text embedded in an email as if that carried its burden:

> "As you can see, staff did in fact search for text messages and produced copies of text messages located in that search."

Email from FOIA-Appeal@fcc.gov; *see* Excerpts from Reading Room FOIA Kimmel Part 4. This single, text message embedded in an email does not prove the FCC carried its burden of a reasonable search. An agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell*, 164 F.3d at 28 (quotations omitted). Reviewing an email

Pl.'s P&A in Supp. of Their Renewed Mot. for Summ. J.
*Citizens for Constitutional Integrity v. FCC*, No. 26-cv-2018                    11

database does not demonstrate the FCC completed a reasonable search of a different record system, Carr's cellphone, for text messages. Citizens specifically requested Carr's text messages, and every definition of a reasonable search would require searching Carr's cellphone.

In other cases, this Court has required cellphone searches for text messages. In one strikingly similar case, the agency "conceded that, in responding to a FOIA Request that specifically sought text messages, it did not carry out a complete search of [a secretary's] government cell phones, the logical location for such communications," and this Court concluded that the "admission of overlooked materials is itself enough to render [the agency's] search inadequate as to these records." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. CV 17-1208 (BAH), 2021 WL 918204, at *13 (D.D.C. Mar. 9, 2021); *see Ctr. for Biological Diversity v. U.S. EPA*, 279 F. Supp. 3d 121, 143 (D.D.C. 2017) ("EPA must search for responsive text messages, instant messages, or other similar agency communications."). When another requester asked for "any and all records," and when it documented the agency used text messages, this Court overturned the agency for failing to search text messages for responsive records. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 373 F. Supp. 3d 120, 122, 127 (D.D.C. 2019).

The plain language of FOIA and Citizens' specific requests required the FCC to search Carr's phone for responsive text messages. The FCC's bare assertions fail to demonstrate any reasonable, good-faith effort reasonably calculated to uncover all

relevant documents. FOIA compels it to search Carr's phone for responsive text strings. *See Campbell*, 164 F.3d at 27-29.

## II. The FCC produced irrefutable evidence that FCC Chair Carr uses text messages for government business, and FOIA compels a search and production.

Even assuming FOIA requires some proof of Carr using text messaging for government business, which it does not, irrefutable evidence proves Carr did so, and FOIA doubly required the cellphone search. *See Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 109 (D.D.C. 2023). The requirement to search other record systems flows from FOIA's requirement that an agency follow "leads that emerge during its inquiry." *Campbell*, 164 F.3d at 28. In particular, FOIA requires agencies to "search text messages when it is reasonably likely that an employee conducted agency business on a pertinent topic via text." *Shteynlyuger*, 698 F. Supp. 3d at 109 (quotations omitted). Upon proving "documented use of text messages," FOIA requires searching the official's text messages. *Judicial Watch*, 373 F. Supp. 3d at 127.

The FCC produced a text, embedded in Carr's email to himself, and that email demonstrates Carr was using text messages for government business. Excerpts from Reading Room FOIA Kimmel Part 4. FOIA requires an agency to "revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Campbell*, 164 F.3d at 28. Consequently, when the FCC identified responsive texts in its email search, FOIA required the FCC to search Carr's cellphone. *See Shteynlyuger*, 698 F. Supp. 3d at 109.

Pl.'s P&A in Supp. of Their Renewed Mot. for Summ. J.
*Citizens for Constitutional Integrity v. FCC*, No. 26-cv-2018                    13

Therefore, even if the FCC could have reasonably assumed that Carr's cellphone contained no responsive text messages (which it could not have done because Citizens sought those exact records), the email with Carr's text message refuted that possibility, and FOIA required the FCC to search his cellphone. *See id.*

## CONCLUSION

When Jimmy Kimmel came back on air, he mentioned that a person from Germany offered Kimmel a job.[13] Kimmel joked, "Can you imagine this country has become so authoritarian that the Germans are like, 'Come here! Cut loose!'" *Id.*

Democracy requires constant vigilance and maintenance, and the People of the United States need this information to hold the FCC Chair accountable. Jimmy Kimmel played audio from Senator Ted Cruz: "if the Government gets in the business of saying, 'We don't like what you the media have said; we're going to ban you from the airwaves if you don't say what we like,' that will end up bad for conservatives." *Id.* at 5:25. On the air, Carr told ABC it didn't like what ABC was doing. In FOIA, Congress gave the People a right to know what else Carr told ABC.

Citizens respectfully request the Court to direct the FCC to disclose Carr's responsive text messages immediately, so Citizens can share it with the People.

Dated July 17, 2026,

> */s/ Jared S. Pettinato*
> JARED S. PETTINATO
> *Attorney for Plaintiff*

---

[13] Jimmy Kimmel Live, *Jimmy Kimmel is Back!* at 4:00 (Sept. 23, 2025), *available at* https://www.youtube.com/watch?v=c1tjh_ZO_tY.

Pl.'s P&A in Supp. of Their Renewed Mot. for Summ. J.
*Citizens for Constitutional Integrity v. FCC*, No. 26-cv-2018                14